IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| IN RE:  Jimmy D. Brock | CASE NO. 18-32486 |
| Lydia J. Brock | Chapter 13 |
| Debtors | Judge Buchanan |

---

**RESPONSE TO MOTION TO DISMISS CHAPTER 13 CASE (DOC. 27)**

---

Now come the Debtors, Jimmy Brock and Lydia Brock, by and through counsel, and move this court for an Order denying the Motion To Dismiss Chapter 13 Case (Doc. 27). A Memorandum in Support is attached hereto.

## MEMORANDUM IN SUPPORT

Home Builders Finance, Inc. ("Home Builders") has filed a Motion to Dismiss alleging that the Debtor lacks good faith and has abused the bankruptcy system. Home Builders has filed multiple motions regarding this matter and incorporated each motion into the other. This Response will address only the issues raised in Home Builders Motion to Dismiss (Doc. 27), and not the other Motions filed by Home Builders. Debtors will file separate responses to those motions.

Home Builders argues this case should be dismissed pursuant to §1307(c) for cause, with bad faith as the cause warranting dismissal. Home Builders first points to the Chapter 13 bankruptcy filing on July 10, 2002 and the  Chapter 7 bankruptcy filing of the Debtor on May 22, 2003, as evidence of bad faith. The  2002 and 2003 bankruptcy filings are irrelevant in this case. The Debtor's 2002 and 2003 bankruptcies were filed prior to ever borrowing money from, or executing a promissory note to Home Builders. In fact, Home Builders was well aware of the prior bankruptcy filings at the time the Debtor signed the promissory note, and Home Builders still found Debtor's credit worthy and that his prior bankruptcy filings were irrelevent to the procurement of the loan. In addition, despite those prior

bankruptcy filings, by its own admission, Home Builders continued to extend credit to the Debtor after the original promissory note was executed.

The Debtor did file a Chapter 13 case on May 20, 2011 (Case No.: 11-32790) in an attempt to stop the foreclosure sale scheduled for the Real Property and to provide a plan to repay the debt to Home Builders. The Debtor's Chapter 13 plan was confirmed, upon agreement between the Debtor and Home Builders, and the Debtor made payments as required by the confirmed plan. In fact, Home Builders received $32,650.55 from the Chapter 13 Trustee in that case.

A provision in the agreed order provided for the Debtor to refinance the Real Property within a certain period of time. Due to circumstances beyond the Debtor's control, the Real Property was not able to be refinanced. The Debtor could never guarantee that the Real Property could be refinanced, rather the Debtor could only *attempt* to refinance the Real Property. Lending regulations at the time prevented him from obtaining a loan, despite his good faith attempt to do so on multiple occasions. Home Builders received disbursements every month from the Chapter 13 Trustee, until Home Builders chose to file for relief from the automatic stay due to the Debtor's inability to refinance the Real Property.

The Debtor made every effort in the 2011 case to pay Home Builders, and despite it's assertions that it worked with the Debtor to extend deadlines, Home Builders knew that the Debtor would not likely be able to refinance the real property. Home Builders would have also continued to receive a steady stream of payments in that case had it not filed for relief from stay. Clearly, the Debtor did not file the 2011 case or this instant case in an attempt to "delay, hinder or defraud" his creditors. Rather the Debtor made every good faith attempt to keep his 2011 case going by making his monthly payments and trying multiple times to refinance the Real Property. Only once Home Builders refused to work with the Debtor, in an unstable real estate market, and filed for relief from stay, did it stop receiving payments from the Debtor in the 2011 case. There can be no bad faith in a case where the Debtor made payments to his creditors and made every effort and attempt to comply with the confirmed Chapter 13 plan.

The Debtor sought new counsel in 2014, increased his household income and filed a new Chapter 13 in Case number 14-32724 on July 29, 2014.  This time the plan intended to pay Home Builders in full

within the 60 months as a Class One creditor.  Debtor proposed a  Chapter 13 plan payment of $3050.00

and a payment to Home Builders as a Class One Creditor in the amount of $2215.00 per month. The

parties reached an agreement and the case was confirmed. Debtor made the majority of his payments in

the case and the total paid to Home Builders  was $83,216.44. The total paid into the case was

$109,517.66.

 The multiple bankruptcy filings by the Debtor are being used as a smokescreen by Home

Builders. The two filings prior to the Debtor obtaining a loan from Home Builders are a non-issue,

leaving only two prior filings that has any relevance. It is not uncommon for a Debtor to have a prior

Chapter 13 bankruptcy filing when trying to save a home. With real property values at an all time low, an

incredibly unstable economy, and the abuse by lenders in extending credit to borrowers whose income

reflected that they clearly could not afford it, has led to an increase in Chapter 13 filings wherein the

Debtor's sole goal is to save his/her home. The bankruptcy laws clearly allow multiple filings and many

debtors require more than one filing to accomplish their task.

 There is also no "lack of good faith" or "abuse" when the Debtor can show there has been a

change in circumstances since the previous filing. The current plan proposed by the Debtor provides for

the debt owed to Home Builders to be paid in full, within the 5 years,  pursuant to 11 USC §1325(b)

without the need for refinancing the Real Property. The debt will be paid through a steady stream of

monthly payments by the Debtor and does not depend on the speculative nature of the current real estate

market or lending regulations.

 Home Builders has failed to adequately explain how the plan was not filed in good faith, other

than to state that the Debtor's refiling of the Chapter 13 bankruptcy is essentially unfair. The Sixth Circuit

has held, in countless decisions, that "Good faith is an amorphous notion, largely defined by factual

inquiry. In a good faith analysis, the infinite variety of factors facing any particular debtor must be

weighed carefully. We cannot here promulgate any precise formulae or measurements to be deployed in a

mechanical good faith equation. The bankruptcy court must ultimately determine whether the debtor's

plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a

sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources. The

decision should be left simply to the bankruptcy court's common sense and judgment." *Metro Employees*

*Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030, 1033 (6th Cir. 1988).

In *Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123 (6th Cir. 1990), the Sixth Circuit set forth a

twelve part test to determine whether a debtor's Chapter 13 plan was proposed in good faith:

(1)   The amount of the proposed plan payments and the amount of the debtor's surplus;

(2)   The debtor's employment history, ability to earn and likelihood of future increase in income;

(3)   The probable or expected duration of the plan;

(4)   The accuracy of the plan's statements of the debts, expenses and percentage repayment of

unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5)   The extent of preferential treatment within classes of creditors;

(6)   The extent to which secured claims are modified;

(7)   The type of debt sought to be discharged and whether any such debt is nondischargeable in

Chapter 7;

(8)   The existence of special circumstances such as inordinate medical expenses;

(9)   The frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10)    The motivation and sincerity of the debtor in seeking Chapter 13 relief;

(11)    The burden which the plan's administration would place upon the Trustee; and

(12)    Whether the debtor is attempting to abuse the spirit of the Bankruptcy Code.

*Caldwell,* 895 F.2d at 1126-27. "These factors merely serve as guidelines for determining good faith." *In*

*re Sharon,* 200 B.R. 181, 196 (Bankr. S.D. Ohio 1996). "A good faith determination is not simply a

matter of counting the factors favoring good faith and numerically weighing them against those factors

indicating a lack of good faith." *In re Gelvin,* 1994 Bankr. LEXIS 1978 (Bankr. S.D. Ohio Nov. 23,

1994). "Accordingly, determination of the Debtor's good faith in proposing the Plan as required under

§1325(a)(3) entails an analysis of the totality of the circumstances of the Plan, with particular attention

paid to the factors set forth in *Caldwell*. Further, while the Plan may have been filed with all of the right motives and intent-that is in subjective good faith, it still may not pass muster under *Caldwell, Okoreeh-Baah* and *Francis* if it cannot survive scrutiny under the objective good faith factors set forth in those cases, paying particular attention to whether it is fundamentally fair, achieves the purposes of the Code and particularly Chapter 13, and will likely be successful." *In re McDonald*, 437 B.R. 278 (Bankr. S.D. Ohio, 2010).

The Debtors cases is filed in good faith as explained below:

1. Home Builders received substantial payments in the 2 previous filings. In the 2011 case Home Builders received $32,650.55 and in the 2014 case Home Builders received $83,216.44. It has received a total of $115,866.99. This differs from most instances of multiple filings as the complaining creditor generally has received little or nothing.

2. The debtor has been employed with his current employer for 1.4 years  and Lydia Brock has been working as a makeup artist for  these clients for 4 years.

3. Debtor Jimmy Brock's 2016 income  was $73,478.00 and his 2017 income was  $79,216.00. His 2018 income through October 1, 2018 is $79334.00. Debtor,Lydia Brock, has earned $16795.00 to date. Jimmie Brock is also now receiving rent of $975.00.

4.  Jimmy Brock's mother passed away May 2017  and his father both passed away in May 2016 leaving him with time off of work and expenses related to the funerals and estates, including the maintaince on a second property.

5. Debtor Lydia Brock's IRS debt required her to be added as a party to the current Chapter 13. These post-petition taxes were part of the problem with the 2014 case.  The non-filing spouse was trying to pay her debts and the IRS, while Debtor Jimmy Brock was trying to make his Chapter 13 payments. The new plan will allow for a better house budget and all of the creditors are being addressed in this plan, inlcuding post-petition property tax.

6. The plan is required to be 60 months.

7. The plan provides for the payment of both the pre-petition real estate taxes and the post-petition real estate taxes to Warren County, which is a change from both previous cases. The real estate taxes are not escrowed. The failure to maintain the payment of property taxes was a factor in the dismissal of the 2014 Chapter13. Creditor, Home Builders, is well aware that the 2014 Chapter 13 frontloaded and favored paying Home Builders over other secured creditors, including Warren County Treasurer. The 2014 plan paid Homebulders as a class one and the prepetition property tax as a class 2.

8. The secured claims are all being paid in full and the debt to Home Builders will be paid in full with interest. Agreed orders are being filed with the court as to the value of both cars which will result in those loans being paid in full. The IRS secured claim will be paid in full.

9. The Debtors did not immiedately refile the 2014 case following its dismissal as they were working with a number of lenders to try to refinance and payoff Home Builders. The Chapter 13 was filed at the last minute to prevent losing their home. The debtors were still working with brokers to try and refinance thier home at the time they filed this case.

10. There are no issues as to debts that would be nondischargeable in a Chapter 7.

11. The Debtors will be amending Schedule B to clarify that certain property listed as owned individually is in fact owned jointly. This impacts the IRS secured claim but does not change it.

12. There is no additional burden to the Chapter 13 trustee in adminstrating the case.

There has clearly been a change in circumstances since the 2014 case was filed and there is no "lack of good faith" in the filing of this Chapter 13 case.

WHEREFORE, the Debtor requests that the Motion to Dismiss be denied.

Respsectfully submitted,


s/ Wayne P. Novick
WAYNE P. NOVICK, 0030248
Attorney for Debtors
2135 Miamisburg-Centerville Rd
Centerville, OH 45459
(937) 436-2606, (937) 436-4602 (fax)
gratefullawyer2@gmail.com


## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2018  a copy of the foregoing Response to Motion to Dismiss was served on the following registered ECF participants **electronically** through the court's ECF System at the email address registered with the court:

US Trustee

Jeffrey M. Kellner, Chapter 13 Trustee

and on the following by **ordinary U.S. Mail** addressed to:

Jimmy Brock and Lydia Brock , 5348 State Route 123, Franklin, Ohio 45005

John Haller, Shumaker, Loop & Kendrick, LLP,  41 South High Street, Suite 2400, Columbus, OH 43215

David J. Coyle, Shumaker, Loop & Kendrick, LLP, North Courthouse Square, 1000 Jackson Street, Toledo, OH 43604


/s/ Wayne P. Novick
WAYNE P. NOVICK, 0030248
Attorney for Debtors
2135 Miamisburg-Centerville Rd
Centerville, OH 45459
(937) 436-2606, (937) 436-4602 (fax)
gratefullawyer2@gmail.com